IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 01-cv-01857-RPM

ATTORNEYS TITLE GUARANTY FUND, INC.,
As successor in interest and assignee of
Joseph H. Fallon, IV,

     Plaintiff,

v.

PROLAND MANAGEMENT, LLC;
CRAIG NELSON; and
TOM WARNES,

     Defendants.

_____

ORDER DETERMINING INTEREST RATE
_____

     Proland Management, LLC, borrowed $616,000 from Joseph H. Fallon IV pursuant to the terms of its promissory note to him, co-signed by Craig Nelson, Tom Warnes and Robert B. Surles dated June 27, 2001.  They promised to pay the "principal sum" of $681,000 in two installments of $340,500 on July 3, 2001, and July 10, 2001, plus interest of $5,000 with the second installment.  The loan was arranged by Rick Gillette who received a brokerage fee of $15,000 paid to him by Fallon when the loan closed.  A legal issue in this case for the collection of a deficiency of the unpaid balance after foreclosure on the security for the loan is whether the effective rate of interest on this loan is greater than the 45% per annum permitted by C.R.S. 5-12-103.  That statute provides, in material part, that

> The rate of interest shall be deemed to be excessive of the limit under this section only if it could have been determined at the time of the stipulation by mathematical computation that such a rate would exceed an annual rate of forty-five percent when the rate of interest was calculated on the unpaid balances of the debt on the assumption that the debt is to be paid according to its terms and will not be paid before the end of the agreed term.

The defendants read this provision to mean that the rate of interest is determined by the total amount that the borrower agreed to pay at maturity minus the loan proceeds it received, calculated at an annual rate. That calculation yields a per diem rate of 1.9% for the first six days and 1.6% for the thirteen days of the balance, making the annual rate of 693.5% and 577% respectively. That makes the loan usurious and the deficiency must be determined by applying the maximum rate of 45%.

The plaintiff contends that the brokerage fee of $15,000 was received by the broker, not Fallon, and is therefore not included in the interest calculation. That is incorrect. The statute defines interest in C.R.S. § 5-12-103(2) as follows:

> The term "interest" as used in this section means the sum of all charges payable directly or indirectly by a debtor and imposed directly or indirectly by a lender as an incident to or as a condition of the extension of credit to the debtor, whether paid or payable by the debtor, the lender, or any other person on behalf of the debtor to the lender or to a third party.

Fallon imposed the broker's fee as a condition of extending the credit of $616,000, and the statute expressly recognizes that the payment may be made to a third party. In *Dikeou v. Dikeou,* 928 P.2d 1286 (Colo. 1996), the Colorado Supreme Court held that the statute must be applied retrospectively to include all forms of interest charges and referred to the criminal usury statute which defines "loan finance charge" as follows:

> (a) "Loan finance charge" means the sum of all charges payable directly or

indirectly by the debtor and imposed directly or indirectly by the lender as an incident to or as a condition of the extension of credit, whether paid or payable by the debtor, the lender, or any other person on behalf of the debtor to the lender or to a third party, including, but not limited to, any of the following types of charges that are applicable:

\* \* \*

(III) Charges incurred for investigating the collateral or credit-worthiness of the debtor or for commission or brokerage for obtaining the credit.

That definition requires inclusion of the $15,000 brokerage fee in computing the rate of interest.

The *Dikeou* case also instructs that the computation be made with the default rate of interest included. The plaintiff has provided a computation to show that the effective annual rate is 42.86%. That excluded the $15,000 brokerage fee and is therefore incorrect. Using the same method, the Court's calculation, attached as Exhibit A, yields a rate of 45.31%. The rate is usurious. Accordingly, the amount of principal and interest due on the date of foreclosure is to be recalculated at a rate of 45% per annum on the $616,000 of loan proceeds received by Proland on June 27, 2001.

It is SO ORDERED:

DATED: August 10th , 2006

                      BY THE COURT:

                      s/Richard P. Matsch

                      _____
                      Richard P. Matsch, Senior District Judge

| Description | Loan Proceeds | Interest | Total |
|---|---|---|---|
| 6/27/01 | $616,000 | | $616,000 |
| 6/27/01 - origination fee | | $50,000 | 50,000 |
| 6/27/01 - brokerage fee | | 15,000 | 15,000 |
| 7/3/01 - late charge [$340,500($.05)] | | 17,025 | 17,025 |
| 7/10/01 - late charge [$340,500($.05)] | | 17,025 | 17,025 |
| 7/10/01 - interest (flat amount) | | 5,000 | 5,000 |
| 7/10/01 - late charge on interest [$5,000($.05)] | | 250 | 250 |
| Interest: 7/3/01-7/10/01 [$340,500(.25)]/365 days x 7 days | | 1,633 | 1,633 |
| Interest: 7/11/01-7/2/02 [$721,933(.25)/365 days x 358 days = 177,022] | | 177,022 | 177,022 |
| Total | | $282,955 | $898,955 |
| Annualized interest rate: [[$616,000(x)]/365 days] x 370 days = $282,955 (6/27/01-7/2/02) | | 45.31% | |

Exhibit A